**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

DUSTIN CHALKER and )
MILITARY RELIGIOUS FREEDOM FOUNDATION, )
                                              )
                          **Plaintiffs,** )
                                              )    **CIVIL ACTION**
v. )    **No. 08-2467-KHV**
                                              )
ROBERT GATES, SECRETARY, )
UNITED STATES DEPARTMENT OF DEFENSE, )
                                              )
                          **Defendant.** )
_____)

**MEMORANDUM AND ORDER**

      Plaintiffs Dustin Chalker and the Military Religious Freedom Foundation bring suit against Robert Gates, Secretary of the United States Department of Defense, seeking injunctive relief for alleged violations of constitutional rights of United States Army members to be free from compulsory religious practices. This matter is before the Court on <u>Defendant's Motion To Dismiss</u> (Doc. #17) filed April 9, 2009. Plaintiffs allege that defendant violated the First Amendment and Article 6 of the United States Constitution by requiring plaintiff to attend three U.S. Army functions which offered sectarian prayers. Plaintiffs also allege that defendant is violating Article 6 of the United States Constitution by constructively imposing a religious test for service as a soldier in the U.S. Army. Defendant seeks dismissal under Rule 12(b)(1), Fed. R. Civ. P., contending that (1) plaintiffs lack standing to bring "pattern and practice" claims because no concrete injury can be remedied by the injunctive relief which plaintiffs propose and (2) plaintiffs' claims are not justiciable because Chalker did not exhaust intramilitary remedies and judicial review would impermissibly interfere with military operations and judgment. In addition or in the alternative, defendant seeks dismissal under Rule 12(b)(6), Fed. R. Civ. P., arguing that plaintiff has failed to

state a claim because (1) military regulations which permit chaplain-led prayer at military ceremonies properly balance religious freedoms and require judicial deference and (2) the tradition of chaplain-led prayer at military ceremonies is constitutional. The Court finds that plaintiffs' claims are nonjusticiable because plaintiffs did not exhaust intramilitary remedies and finds that this case should be dismissed for lack of jurisdiction.[1]

**I.     Legal Standards**

**A.     Standing**

Federal courts must determine that they have jurisdiction before proceeding to the merits. Lance v. Coffman, 549 U.S. 437, 497 (2007) (quoting Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 94-95 (1998). Article 3 of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies," and one component of the case-or-controversy requirement is standing. This component requires a plaintiff to demonstrate the now-familiar elements of injury in fact, causation and redressability. Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

**B.     Rule 12(b)(1)**

Rule 12(b)(1) governs the motion to dismiss for lack of subject matter jurisdiction. Rule

---

[1] Plaintiffs' amended complaint brings two causes of action: (1) a claim that by requiring Chalker to attend military formations and functions where sectarian Christian prayers are delivered, defendant is violating the Establishment Clause of the First Amendment and (2) a claim that because Chalker has been required to attend such functions and formations he has been constructively required to submit to a religious test of duty as a soldier in violation of Article 6, Clause 3 of the Constitution. Presumably to tie plaintiffs' three allegations relating to Chalker to the injunctive relief they seek, they include voluminous "pattern and practice" allegations. Plaintiffs seek injunctive relief to prohibit the U.S. Department of Defense and its personnel from intervening with the rights of Chalker *and those similarly situated* to be free from compulsory religious practices and the imposition of religious tests, and to prohibit mandatory attendance at events which include sectarian prayer.

12(b)(1) motions generally take the form of facial attacks on the pleading or factual attacks on the accuracy of its allegations. Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (citing Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990)). Through evidence outside the complaint, defendant attacks the factual accuracy of plaintiffs' allegations. Therefore the Court does not presume the truthfulness of the factual allegations of the complaint, but has wide discretion to allow affidavits and other documents and to resolve disputed jurisdictional facts under Rule 12(b)(1). See Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (reference to evidence outside pleadings does not convert motion to Rule 56 motion); RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134 (6th Cir. 1996) (in factual Rule 12(b)(1) motion, trial court free to weigh evidence and satisfy itself as to power to hear case). To the extent the parties dispute facts based on evidentiary submissions, the Court has considered the submitted evidence and, if necessary, decided the disputed factual questions. See Robinson v. Malaysia, 269 F.3d 133, 140 & n.6. (2d Cir. 2001) (district court must consult factual submissions if resolution of factual issue may result in dismissal of complaint for lack of jurisdiction).

### C. Rule 12(b)(6)

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. Id.; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 129 S.Ct. at 1950.

The Court need not accept as true those allegations which state only legal conclusions. See id.; Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Plaintiffs bear the burden to frame their complaint with enough factual matter to suggest that they are entitled to relief; it is not enough for them to make threadbare recitals of a cause of action accompanied by mere conclusory statements. Twombly, 550 U.S. at 556. Plaintiffs make a facially plausible claim when they plead factual content from which the Court can reasonably infer that defendant is liable for the misconduct alleged. Iqbal, 129 S.Ct. at 1949. Plaintiffs must show more than a sheer possibility that defendant has acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendant's liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but not "shown" – that the pleader is entitled to relief. Id. at 1950. Finally, the degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2) depends upon the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir.2008) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 232-32 (3d. Cir. 2008)).

## II. Factual Background

Based on plaintiffs' amended complaint and defendant's memorandum in support of its motion to dismiss and the affidavits attached thereto, the facts are as follows:

Chalker has served in the U.S. Army since February 11, 2002 and is currently a Specialist posted at Fort Riley, Kansas. His active duty experience includes a deployment to Iraq, where he

earned the Combat Medic Badge and the Purple Heart. Chalker belongs to the Military Religious Freedom Foundation ("MRFF"), a not-for-profit public interest organization which advocates that the military recognize and defend the rights of armed forces to be free of compulsory religious practices. Chalker is an atheist and as such does not voluntarily participate in religious services, ceremonies or rituals.

On December 5, 2007, after his unit returned from a deployment in Iraq, Chalker attended a "welcome home" ceremony which involved a sectarian Christian prayer. On February 7, 2008, Chalker attended a "re-patching" ceremony which began and ended with a sectarian Christian prayer by the battalion chaplain. On May 16, 2008, Chalker attended the 1st Engineer Battalion's Organization Day at which a sectarian Christian prayer was delivered. Attendance at each event was mandatory, and Chalker has been required to attend other change-in-command ceremonies that included Christian sectarian prayers.

Chalker alleges that he sought relief from mandatory attendance for the three named events through his chain of command and the equal opportunity process, but that the results were "unsatisfactory." Chalker also alleges that he invoked an intra-army administrative process which yielded "no substantial relief."

Army regulations require soldiers to submit requests for religious accommodation to their immediate commanders.[2] Defendant offers affidavit testimony from Captain Kenneth R. Jones,

---

[2] At all times relevant to this lawsuit, a department of defense directive recognized the rights of members of the Armed Forces to observe the tenets of their respective religions and required that requests for accommodation of religious practices be approved by commanders unless such accommodation would have "an adverse impact on military readiness, unit cohesion, standards, or discipline." DOD Directive ("DODD") 1300.17 ¶ 3.1 (Feb. 3, 1988). Consistent with this directive, the Army developed regulations which allowed religious accommodations and set forth
(continued...)

commander of Chalker's company from April 11, 2007 through November 26, 2008. According to Jones, Chalker did not initiate a request for religious accommodation for any of the three named events, and he first learned about Chalker's desire to be excused after Chalker filed this lawsuit. Jones did receive and approve Chalker's request for religious accommodation for a change-in-command ceremony scheduled for November 26, 2008.

The Army has a comprehensive Equal Opportunity Program that is separate from its religious accommodation regulations.[3] Army regulations require soldiers to submit Equal Opportunity

---

[2](...continued)
a process for requesting such accommodations. A soldier had to submit an accommodation request to his or her immediate commander, who had ten working days to respond. If the commander denied the request, the regulations provided an appeals process. To appeal, the soldier had to submit a memorandum describing the nature of and basis for the requested accommodation, and could include additional statements or doctrinal declarations to support the request. A chaplain interviewed the soldier and evaluated the basis for and sincerity of the request, and could make a recommendation concerning disposition of the appeal. A legal advisor reviewed the appeal and could also make a recommendation. The appeal was forwarded through each level of command; if the appeal was granted at any level, written notice of approval of the accommodation was forwarded to the soldier; if the appeal was denied, it was automatically forwarded to the next level of command. If the appeal was denied at all levels of command, it was forwarded to the Deputy Chief of Staff, G-1 – who manages personnel policies across all Army components – who had 30 days to render a final decision from which no appeal could be taken.

[3] At all times relevant to this lawsuit, a Department of Defense directive recognized that unlawful discrimination is contrary to good order and discipline and is counter-productive to combat readiness and mission accomplishment. DODD 1350.2 ¶¶ 4.2, 4.6, E2.1.16. Consistent with this directive, the Army implemented its Equal Opportunity Program, which includes a comprehensive complaint processing system that permits an aggrieved soldier to make either an informal or a formal EO complaint. An informal complaint is unwritten and is typically resolved through "discussion, problem identification, and clarification of the issues" with the help of another unit member or someone in the soldier's chain of command. If a soldier is dissatisfied with the resolution of an informal complaint, his sole recourse is to file a formal complaint which requires specific actions, is subject to a timeline and requires documentation of the actions taken.

Soldiers generally must file formal complaints within 60 days of the alleged incident. To facilitate prompt resolution of EO issues at the lowest possible level, soldiers are encouraged to submit EO complaints through their chain of command. A soldier may also submit a complaint
(continued...)

Complaints within 60 days of the alleged incident. Defendant offers affidavit testimony from Sergeant First Class Dennis D. McQuay, Equal Opportunity Advisor for Chalker's brigade. McQuay has handled every EO complaint within the brigade since October 5, 2007. Chalker has filed one EO complaint since October 27, 2007, but he did not file an EO complaint regarding any of the three named events. McQuay helped Chalker file an EO complaint regarding the ceremony on November 26, 2008 which alleged that Chalker suffered religious discrimination even though his request for

---

³(...continued)
through a number of other channels. These include (1) someone in a higher echelon of his chain of command; (2) his unit's EO Advisor; (3) an Inspector General; (4) a Chaplain; (5) medical agency personnel; or (6) the Staff Judge Advocate. A commander has 14 days after receiving a formal complaint to investigate either personally or through an investigating officer. The commander must also implement a plan to protect the complainant from reprisal and give the complainant periodic feedback on the status of the investigation. If the complaint is substantiated, the commander must take corrective action. Violations of EO policy, like violations of any lawful order, subject the offender to a wide range of potential punishments. Possible administrative sanctions include formal counseling, letters of reprimand, withholding of privileges, unfavorable performance reviews, administrative reduction in rank, transfer to another unit, bar to reenlistment and discharge from the Army.

The Army punishes serious breaches of EO policy under the Uniform Code of Military Justice. The regulations also provide an extensive appeals process. A soldier who is dissatisfied with the resolution of a complaint can appeal to the next highest commander in his chain of command. Once an appeal is filed, the original investigating commander has three days to refer the appeal to the next highest commander, who then has 14 days to act on the appeal. Further appeals can be taken up the chain of command to the brigade level, from which an appeal lies to the General Court-Martial Convening Authority, whose decisions are final.

The entire complaint submission and resolution process is subject to multiple layers of oversight and follow up. First, a commander must report any formal complaint to the General Court-Martial Convening Authority within three days of its receipt, and must submit periodic progress reports until the complaint is resolved. Second, an EO Advisor must conduct a followup assessment of all formal complaints, substantiated or not, within 45 days of a final decision, and must then present his findings to the commander within 15 days. Third, all formal complaints are reported by each command in quarterly and annual reports. Fourth, even where a complaint is unsubstantiated, a commander must determine whether the allegations indicate problems that might benefit from EO initiatives or other leadership actions.

religious accommodation had been granted.[4] On December 24, 2008, brigade commander Colonel Eric Wesley informed Chalker that his EO complaint had been determined to be unfounded. Chalker did not appeal.[5]

## III. Analysis

### A. Standing

Defendant contends that plaintiffs lack standing to bring "pattern and practice" claims, see fn. 5, supra, because plaintiffs do not show that they have a personal stake in or have suffered a

---

[4] According to Jones, he received a request for accommodation on November 25 for an event which was scheduled for November 26, 2008. According to McQuay, the event was scheduled for November 25, 2008 and Chalker filed an EO complaint the following day on November 26, 2008. Plaintiffs make no attempt to correct or clarify this discrepancy, and the exact date of this event is not material. Therefore the Court assumes the event occurred on November 26, 2008.

[5] In their complaint, Plaintiffs include 19 pages of so-called "pattern and practice" violations: a suicide prevention PowerPoint presentation which incorporated religious themes at a United States Air Force base in England; religious books authored by military personnel which bear the five service branch seals and are sold in military Pxs; military chapels in Iraq and Afghanistan which have permanent crosses and other Christian displays; a program at Tabernacle Baptist Church for soldiers stationed at Fort Leonard Wood, Missouri; Army and Air Force information forms which allow soldiers to designate religious preferences; military ministry programs in which military personnel participate at the largest military training installations, service academies and ROTC campuses; National Day of Prayer events and military flyovers; the practice of dipping the American flag before the altar at the U.S. Naval Academy Chapel in Annapolis, Maryland; military personnel participation in religious entertainment productions and events; religious materials to supplement the Army "Strong Bonds" family wellness program; anti-Muslim presentations at U.S. military academies, colleges and bases; religious themes in the 2008 Army Suicide Prevention Presentation and Manual; proselytizing to Muslims in Iraq and Afghanistan; official Air Force sponsorship of an evangelical Christian motocross ministry program; an anti-Muslim article in the Air Force's *Air & Space Power Journal*; military personnel endorsement and promotion of non-federal entities and religious products; military support and personnel endorsement for private and military religious organizations; religious symbolism on military garb, aircraft and squadron buildings of the Air Force 523rd Fighter Squadron; a biblical quotation above the door of the Air and Space Basic Course Classroom at Maxwell Air Force Base; military personnel using official email accounts to send religious messages and failure of military chain of command and EO system to adequately address religious complaints.

-8-

personalized injury from the conduct about which they complain. Plaintiffs, however, correctly assert that Chalker has personal standing to bring the two claims which he asserts, because both relate to "personalized injury from the conduct about which he complains." MRFF has concurrent associational standing.[6]

To allege an "actual case or controversy," which the Constitution requires for federal courts to exercise jurisdiction, plaintiffs must allege some threatened or actual injury resulting from putatively illegal action. O'Shea v. Littleton, 414 U.S. 488, 494-95 (1974). Plaintiffs must have a personal stake in the outcome, and must allege an injury or threat which is real and immediate, not conjectural or hypothetical. Id. If plaintiffs do not identify themselves as having suffered any injury from the specified conduct, they fail to allege a present case or controversy. Similarly, plaintiffs do not allege a case or controversy under Article 3 by raising only a general grievance about government that claims harm relating generally to the proper application of the Constitution and laws. Lance v. Coffman, 549 U.S. 437, 439 (2007).

Plaintiffs correctly point out that the "pattern and practice" allegations are not "claims" for which the complaint seeks relief. Rather, plaintiffs offer the "pattern and practice" allegations (as well as allegations related to three specific events which Chalker personally attended) to support their two causes of action: (1) that the Department of Defense violated the Establishment Clause when it required Chalker to attend military functions and formations which included Christian sectarian prayers and (2) that the Department of Defense has violated Article 6 of the Constitution

---

[6] As an organization, MRFF can assert associational standing if Chalker personally has standing in his own right. Hunt v. Wash. State Apple Adv. Comm'n, 432 U.S. 333, 343 (1977) (association possesses standing to sue on members' behalf when members otherwise have standing, interests it protects are germane to purpose of organization and neither claim nor relief requires individual members to participate).

by constructively requiring Chalker to submit to a religious test as a condition of service in the United States Army. Clearly Chalker and MRFF have standing to bring these two claims, and defendant concedes as much. While the "pattern and practice" allegations may indeed be superfluous and irrelevant to these two claims, they do not dispossess Chalker and the MRFF from constitutional standing.

Defendant also challenges plaintiffs' standing by arguing that because plaintiffs request what amounts to a generic "obey the law" injunction, the injunctive relief which they seek will not redress any concrete injury.[7] While defendant argues generally that generic "obey the law" injunctions are inappropriate, he cites no case law to suggest how the requested injunctive relief implicates plaintiffs' standing. Accordingly, defendant's standing challenges are misplaced and the Court overrules his motion on that ground.

### B. Exhaustion Of Intramilitary Remedies

Defendant argues that Chalker did not exhaust his intramilitary remedies and that Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971), adopted by the Tenth Circuit in Lindenau v. Alexander, 663 F.2d 68 (10th Cir. 1981), therefore bars his claims. Specifically, defendant argues that Chalker did

---

[7] Plaintiffs' request for injunctive relief states in relevant part as follows:

> Plaintiffs seek an injunction prohibiting the United States Department of Defense and its civilian and military personnel from interfering with the rights of plaintiff Chalker and those similarly situated to be free of compulsory religious practices and to be free of imposition of a religious test . . . The injunctive relief would specifically prohibit mandatory attendance by plaintiff Chalker and those similarly situated at military functions/formations that include a sectarian prayer.

See Amended Complaint For Injunctive Relief (Doc. #6) at ¶¶ 17-18.

not pursue intramilitary remedies with respect to the three events alleged in the complaint: a "welcome home" ceremony on December 5, 2007, which Chalker attended after his unit returned from Iraq; a "re-patching" ceremony on February 7, 2008; and a 1st Engineer Battalion's Organization Day on May 16, 2008. Plaintiffs counter that exhaustion through intramilitary channels is futile and is excused because the remedies are inadequate.[8]

The parties agree that to determine whether plaintiffs' claims in this case are justiciable, the Court should apply the test devised in <u>Mindes</u>, as adopted by the Tenth Circuit in <u>Lindenau</u>. Under <u>Mindes</u>, a court which is contemplating review of an internal military decision must first determine (1) whether the case involves an alleged violation of a constitutional right, applicable statute or regulation, and (2) whether intra-service remedies have been exhausted. <u>Lindenau</u>, 663 F.2d at 71. If plaintiff satisfies this threshold test, the court then weighs (1) the nature and strength of the challenge to the military determination; (2) the potential injury to plaintiff if review is refused; (3) the type and degree of anticipated interference with the military function; and (4) the extent to which military discretion or expertise is involved in the challenged decision. <u>Id.</u>

Defendant argues that Chalker cannot satisfy the threshold test because he did not exhaust or even pursue intraservice remedies for the three events in question. The complaint makes the conclusory allegation that through his chain of command and the equal opportunity process, Chalker sought relief from mandatory attendance for the three named events but that the results were "unsatisfactory." The complaint also alleges that Chalker invoked an intra-army administrative

---

[8] The parties do not address the exhaustion requirement as applied to the "pattern and practice" allegations, presumably because plaintiffs do not allege exhaustion with respect to those claims. The Court therefore concludes that plaintiffs do not meet the threshold exhaustion requirement with respect to the "pattern and practice" allegations.

process from which he obtained "no substantial relief." Defendants counter with affidavit testimony from Chalker's commander and chaplain, who both testify that Chalker did not file either a request for religious accommodation or an EO complaint relating to any of the three alleged events. Both also testify that regarding a separate event which is not part of this case, Chalker filed both a request for religious accommodation (which he received) and an EO complaint, which his brigade commander determined was unfounded.

Plaintiffs provide no evidence to refute defendant's affidavits. Instead, plaintiffs argue that for purposes of this motion, the court "must accept all well-pleaded allegations in the complaint as true." Plaintiffs ignore the fact that defendant brings this motion under Rule 12(b)(1), which permits the court to review affidavits and other factual submissions to resolve disputed jurisdictional facts. The amended complaint merely alleges that Chalker "sought relief from mandatory attendance at the subject functions/formations through his chain of command and the equal opportunity process" and "sought relief for his claims by invoking an intra-army administrative process . . . [and] exhausted this alternative remedy but has obtained no substantial relief." Amended Complaint For Injunctive Relief (Doc. #6), filed December 29, 2008 at ¶¶11- 12. This does not refute defendant's affidavit testimony. Further, these conclusory allegations, without more specificity, do not meet the pleading standard articulated for Rule 12(b)(6) in Iqbal v. Ashcroft, 129 S. Ct. 1937, 1950 (2009). Iqbal requires plaintiffs to plead factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. Id. at 1949. A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement does not stand. Id. Further, on a motion to dismiss, the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." Bell Atlantic Corp., 550

U.S. at 555 (2007). Here, plaintiffs wholly fail to refute defendant's testimony that plaintiffs did not exhaust intramilitary remedies with respect to the three incidents which form the basis of Chalker's claims.

Plaintiff argues that the futility exception excuses his failure to exhaust. See Walmer v. U.S. Dept. of Def., 835 F. Supp. 1307, 1310 (D. Kan. 1993) (recognizing inadequacy as exception to intramilitary exhaustion requirement). Specifically, plaintiff argues that because he sought relief through his chain of command but the results were unsatisfactory, he could not reasonably have exhausted his appeals before the events and as such, any attempt would have been futile. The Tenth Circuit, however, limits the futility exception to instances where resort to administrative remedies would be clearly useless. McGraw v. Prudential Ins. Co. of Am., 137 F.3d 1253, 1264 (10th Cir. 1998). Plaintiffs' conclusory allegations provide no evidence or information to explain why, or how, the appeals process would have been "clearly useless." Chalker received a religious accommodation on at least one occasion, and without knowing more about his "unsatisfactory" attempt to obtain relief, i.e. from whom he requested it, how far in advance of the event he sought it, and how far up the chain of command he pursued the request, the Court cannot conclude that the futility exception excuses his failure to exhaust.

Finally, plaintiff argues that he should be excused from exhausting intramilitary remedies because such remedies are inadequate. See Walmer, 835 F. Supp. at 1310 (recognizing inadequacy as exception to intramilitary exhaustion requirement). Plaintiffs argue that the "unique facts" of this case make available remedies inadequate. Specifically, plaintiffs postulate that given the recurring nature of events which include sectarian prayer, even if he would be excused every time, he would still be forced to seek relief from attending each event, which is burdensome. Plaintiff further

-13-

hypothesizes that he might not have enough advance notice of a sectarian prayer event to initiate the administrative process, and that the administrative process might not prevent personnel from spontaneously initiating sectarian prayer. He also argues that the "pattern and practice" allegations demonstrate that he will likely be subjected to objectionable sectarianism throughout his military career and that being forced to seek repeated requests for relief is a "bandage" which does not remedy the underlying ailment, thereby making the administrative remedies inadequate.

In support, plaintiffs direct the Court to U.S. ex rel. Brooks v. Clifford, 412 F.2d 1137 (4th Cir. 1969). In Brooks, a pre-Mendes decision, the petitioner sought a writ of habeas corpus which discharged him from the Army as a conscientious objector, but he had not to applied to the Army Board for Correction of Military Records after the Department of the Army denied his discharge request. The Fourth Circuit determined that his conscientious objection was well founded. It then declined to require plaintiff to exhaust his claim through Army administrative channels because while doing so he would be required to engage in the very conduct he found unconscionable. The court concluded that because the Army hearing process took approximately four months, but habeas proceedings progressed considerably faster, exhaustion was not required. Id.

Plaintiffs argue that under Brooks, Chalker is not required to exhaust because a "remedy that cannot be had in time to prevent injustice is, essentially, no remedy at all." The Court disagrees. Plaintiffs provide no evidence that the remedy which they seek – that Chalker not be required to attend military functions which include sectarian prayers – cannot be obtained "in time" through the Army's processes. Chalker has provided no evidence of even one instance where he was denied intramilitary relief, or when he could not receive timely relief through that process. Accordingly, the Court concludes that the inadequacy exception to the exhaustion requirement does not apply in

this case, and that Chalker has failed to exhaust his intramilitary remedies as required by Mendes. The Court sustains defendant's motion and dismisses plaintiffs' claims as nonjusticiable under Rule 12(b)(1).

**IT IS THEREFORE ORDERED** that Defendant's Motion To Dismiss (Doc. #17) filed April 9, 2009 be and hereby is **SUSTAINED**. Plaintiffs' claims are hereby **DISMISSED**.

Dated this 7th day of January, 2010 at Kansas City, Kansas.

                                      s/ Kathryn H. Vratil
                                      KATHRYN H. VRATIL
                                      United States District Judge